**MANDATE**

23-668-cv
*The Gabelli Asset Fund v. Garrett Motion Inc.*

### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of April, two thousand twenty-four.

Present:
 JOHN M. WALKER, JR.,
 WILLIAM J. NARDINI,
 STEVEN J. MENASHI,
  *Circuit Judges.*

---

THE GABELLI ASSET FUND, THE GABELLI DIVIDEND & INCOME TRUST, THE GABELLI VALUE 25 FUND INC.,

  *Lead-Plaintiffs-Appellants*,

GAMCO ASSET MANAGEMENT INC.,

  *Movant-Appellant,*

 v.  23-668-cv

GARRETT MOTION INC., OLIVIER RABILLER, PETER BRACKE, SEAN DEASON,

  *Defendants-Appellees*,

RUSSELL JAMES, CARLOS M. CARDOSO,

MAURA J. CLARK, COURTNEY M. ENGHAUSER, SUSAN L. MAIN, CARSTEN REINHARDT, SCOTT A. TOZIER,

    *Consolidated-Defendants-Appellees.*[*]

| | |
|---|---|
| For Lead-Plaintiffs-Appellants: | ANDREW J. ENTWISTLE (Arthur V. Nealon, Joshua K. Porter, *on the brief*), Entwistle & Cappucci LLP, Austin, TX |
| For Appellees: | SANFORD I. WEISBURST (Michael B. Carlinsky, Jacob J. Waldman, Jaclyn Palmerson, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY |

Appeal from a judgment of the United States District Court for the Southern District of New York (Jennifer L. Rochon, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants The Gabelli Asset Fund, The Gabelli Dividend & Income Trust, The Gabelli Value 25 Fund Inc. (together, "Plaintiffs"), and Movant-Appellant Gamco Asset Management appeal from a judgment of the United States District Court for the Southern District of New York (Jennifer L. Rochon, *District Judge*), entered on March 31, 2023, dismissing Plaintiffs' Third Amended Complaint ("TAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).

On October 1, 2018, Honeywell International Inc. ("Honeywell") spun off its transportation systems business into a new public company called Garrett Motion Inc. ("Garrett").

---

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

As part of the spin-off, Garrett agreed to indemnify Honeywell for its legacy asbestos liabilities up to a maximum amount of $5.25 billion. The indemnity obligations to Honeywell, and the restrictive terms of the agreement, eventually became a severe constraint on Garrett's ability to conduct its core business operations. On September 20, 2020, Garrett filed for Chapter 11 bankruptcy protection. After Garrett initiated the bankruptcy proceedings, Plaintiffs filed a consolidated class action against Garrett and various of its directors and officers, including Defendants-Appellees Olivier Rabiller, Peter Bracke, Sean Deason, Russell James, Carlos M. Cardoso, Maura J. Clerk, Courtney M. Enghauser, Susan L. Main, Carsten Reinhardt, and Scott A. Tozier (together, "Director and Officer Defendants" and together with Garrett, "Defendants"). Following dismissal of the first two complaints, Plaintiffs filed the TAC, alleging that from February 27, 2020, to September 18, 2020 (the "Class Period"), Garrett made false or misleading public statements regarding the financial health of its business, in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and its implementing regulation ("Rule 10b-5"), 17 C.F.R. § 240.10b-5(b), as to all Defendants, and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), as to the Director and Officer Defendants. The district court granted Defendants' motion to dismiss the TAC, determining, among other things, that Plaintiffs failed to plead facts giving rise to a strong inference of scienter, as required under the heightened pleading standard required by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4. This appeal followed. We assume the parties' familiarity with the case.

"We review the district court's dismissal of a complaint *de novo*." *Altimeo Asset Mgmt. v.*

3

*Qihoo 360 Tech. Co*., 19 F.4th 145,149 (2d Cir. 2021).[1] "In considering a motion to dismiss a § 10(b) action, we must accept all factual allegations in the complaint as true and must consider the complaint in its entirety." *Id*. A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is well established that securities fraud claims are subject to the heightened pleading requirements of Rule 9(b), which requires plaintiffs to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Ganino v. Citizens Utilities Co*., 228 F.3d 154, 168 (2d Cir. 2000). Additionally, under the PSLRA, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the [misleading] statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

To state a claim under Section 10(b) and Rule 10b-5, "a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *Altimeo Asset Mgmt*., 19 F.4th at 149-50. A plaintiff can plead scienter by "alleging facts demonstrating that defendants had both

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alteration marks, footnotes, and citations.

4

the motive and an opportunity to commit fraud or . . . otherwise alleging facts to show strong circumstantial evidence of defendants' conscious misbehavior or recklessness." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74 (2d Cir. 2001). To qualify as "strong," an inference of scienter "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). "Where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).

Having conducted an independent and *de novo* review of the record and relevant case law, we agree with the district court's careful and well-reasoned conclusion that Plaintiffs failed to plead scienter with the requisite specificity. Accordingly, we need not address the district court's alternative holding that the complaint was subject to dismissal for failure to plead with specificity that the alleged misstatements were false or misleading as required under federal securities laws.

On appeal, Plaintiffs contend that the TAC adequately alleged scienter by setting forth facts constituting strong circumstantial evidence of Defendants' recklessness. Specifically, Plaintiffs argue that Defendants misleadingly reassured investors that it was positioned for long term success, even though Defendants knew by the start of the Class Period that Garrett could not continue to operate as a standalone company and could not execute a strategic transaction outside of bankruptcy. We do not agree that the complaint adequately alleges reckless behavior that could give rise to an inference of scienter.

5

The inference of scienter is not compelling because Garrett's liabilities and the terms of the Honeywell indemnity were public information, and Garrett spoke candidly about the risks posed by its capital structure on numerous occasions throughout the Class Period. For example, in its May 11, 2020, earnings call and press release, Garrett highlighted its positive business fundamentals, agility, and position for long term success, but that same day issued a Form 10-Q for the first quarter of 2020, which warned that Garrett might default under the Credit Agreement, raising "substantial doubt as to [its] ability to continue as a going concern." *Id.* at 1425. In addition, during the May 11 earnings call, Garrett's chief executive officer stated that "it is clear that our capital structure was ill suited to cope with any meaningful operating challenges." *Id.* at 1407.

Plaintiffs also argue that Garrett misled investors by failing to disclose that it was actively pursuing a bankruptcy strategy. In particular, Plaintiffs point to an August 26, 2020, press release in which Garrett stated that it "ha[d] not yet determined whether to pursue any balance sheet restructuring alternatives." *Id.* at 1480. Plaintiffs argue that this statement was misleading because it was made only a month before Garrett decided to proceed with the bankruptcy. But the same press release made clear that Garrett was in serious financial trouble and that its balance sheet would likely need to be restructured one way or another. It specifically informed investors that "Garrett's high leverage is exacerbated by significant claims asserted by Honeywell against certain Garrett subsidiaries under the disputed subordinated asbestos indemnity and the tax matters agreement" and that Garrett's capital structure was "inappropriate" and "ill-suited to cope with any meaningful challenges at the macroeconomic level." *Id.* The press release also emphasized

6

that "with a restructured balance sheet . . . . Garrett will have the ability to invest to further strengthen its position as a market leader," but "[t]here can be no assurance that recoveries in any restructuring will approximate current trading prices of Garrett's securities." *Id.* The August 2020 press release thus does not give rise to an inference of scienter because it in fact made clear to investors that restructuring was likely. Moreover, Garrett was not obligated to disclose that it was considering bankruptcy as one of several possibilities. *See Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 183 (2d Cir. 2001) (explaining that "review, discussion or recommendation of strategic alternatives" does not necessarily "present a question of materiality for the jury").

Plaintiffs also point to a declaration by Scott Deason, Garrett's chief financial officer, submitted in Garrett's later bankruptcy proceedings as evidence of Garrett's financial condition during the Class Period. Plaintiffs argue that portions of Deason's declaration show that Garrett knew early in the Class Period that bankruptcy was likely, which supports an inference of scienter. The Deason declaration postdates the Class Period, but we have held that "post-class period data may be relevant to determining what a defendant knew or should have known during the class period." *In re Scholastic*, 252 F.3d at 73. Nonetheless, Deason's statement does not show that Garrett was resigned to the likelihood of bankruptcy early in the Class Period; rather, it states that Garrett's "strategic review process lasted months and considered a wide variety of options, including strategic mergers and stand-alone recapitalizations, both out-of-court and with the assistance of Chapter 11." App'x at 696. Plaintiffs' reliance on Deason's declaration is therefore an impermissible attempt to "plead fraud by hindsight" and does not support an inference of scienter.

7

Overall, Plaintiffs' theory of Defendants' behavior—that they misled investors by reassuring them of Garrett's financial health while knowing the company was doomed—is not plausible. Because Garrett's high leverage relative to its competitors and the onerous terms of the Honeywell obligations were public information, it is unlikely that Garrett believed it could deceive investors as to the long-term viability of its capital structure when investors could easily evaluate such claims in light of the financial information in its public filings. Moreover, Garrett acknowledged the risks posed by its capital structure many times during the Class Period. *See Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 185 (S.D.N.Y. 2012) ("It defies logic to conclude that executives who are seeking to perpetrate fraudulent information upon the market would make such fulsome disclosures."), *aff'd sub nom. Central States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72 (2d Cir. 2013). Finally, even if Garrett had succeeded in deceiving the market, its deception would have, at most, provided "a short respite from an inevitable day of reckoning" before the truth was discovered. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994). The district court correctly concluded that the TAC did not adequately plead scienter.

\* \* \*

We have considered the remainder of Plaintiffs' arguments and find them to be unpersuasive. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit